Mr. Justice DANIEL
 

 delivered the opinion of the court.
 

 This is a writ of error to the Supreme Coui of Ohio,- prosecuted under the twenty-fifth'section of the act to establislrthe judicial courts of the United States, and arises out of the following facts and proceedings.
 

 By the fourth section of an act of Congress of the 3d of March, 1803, (2 Statutes at Large, 226,) a township of land in the Cincinnati land district was granted to-the State of Ohio for the purpose of establishing a university.
 

 Op the 17th of February, 1809, the legislature of Ohio, by law, incorporated and established the Miami University, and, by the tenth section of this law, vested the township above men-tionéd in the corporation, for the support of the university, and authorized it to divide the township into Tots, and to make leases of these lots for the term of ninety-nine years, renewable for ever, but subject to. a valuation at,intervals of fifteen years. The thirteenth section of the law contains the following provision : — “ That the lands appropriated and vested in the corporation, with the buildings which may be erected thereon for the accommodation of the president, professors, and .other offi-«ers, students, and servants of the University, and any buildings
 
 *741
 
 appertaining thereto, and also the dwelling-house and other buildings which may be. built and erected on, the lands, shall be exempt from all State taxes.’' Under the authority of this law of Ohio, the lands vested in the university were divided into lots and leased out, and the plaintiff in error became the lessee of a part of them. On the 16th of March, 1839, the legislature of Ohio passed an act entitled
 
 ■“
 
 An act providing ,for the. levying of a school tax in Oxford township, in Butler county.” The township of Oxford is the same which was vested in the Miami University by the law of the 17th of February, 1809. The first 'section of the law of 1839 provided that the county commissioners of Butler county should appoint one or more appraisers in the township of Oxford, whose duty it should be to appraise the lands held under permanent leases in said township at their true value in money, considered in their natural staté, and that, in making such appraisement, they should take into view the rent encumbrance upon the same annually or otherwise payable to the Miami Univérsity by reason of the condition , of the leases under which such lands are holden. The third section of the act of 1839 appropriates the taxes thereby ordered to be assessed and levied on the lands in Butler bounty exclusively to the support óf the cojnmon schools in the school districts of the township of Oxford, and directs the disbursement of the amount of these taxes in conformity with the provisions of a statute of Ohio for the regulation of common schools, passed on the ■ 7th of March, 1838. The lease under which the plaintiff in error claims sets out specially the extent of his tenure, with the. privilege of. perpetual renewal,'and, in general terms, refers to all the privileges and immunities granted to the lessees of the university by the several acts and laws of the State. Inconsequence of a demand made-by the auditor and treasurer of Oxford township for the taxes assessed on the lands held by the plaintiff for the use of the common schools of that township, the plaintiff filed his bill in the Court of Common Pleas of Butler county,(making defendants thereto the auditor and treasurer of the township and the trustees of the Miami University, and praying that the auditor and treasurer and their successors might be perpetually enjoined from collecting of the plaintiff any taxes whatsoever enacted by the State and imposed oh the. lands held by him under leases from the president and directors of the Miami University. The plaintiff claims an exemption from the payment of all taxes, under the provision of the tenth section of the act of 1809, and insists that the law of 1839 is inconsistent with the privilege or exemption secured to him by the former law; The bill was demurred to by the defendants ; the demurrer was sustained by the Court of Com-
 
 *742
 
 naon Pleas, and the bill directed to be dismissed'; and upon an appeal to the Supreme Court of the State, the decree ol the Court of Common Pleas was in all respects affirmed.
 

 In considering this case, a difficulty meets us at the threshold in . the question of jurisdiction. This being neither an appeal from, nor writ of error to, a court of the United States, but a case brought hither under the twenty-fifth section of the Judiciary Act, it must fall within some of the categories prescribed by that section, in Order to justify the cognizance of it by this court; and this must appear too in the modes, and to the extent, which this court has repeatedly and distinctly announced. It is contended, in the argument on behalf of the plaintiff in error, that the act of the legislature of Ohio, of March 6th, 1839, is an invasion of his right to exemption from taxes, or rather
 
 from all taxation,
 
 alleged to have been conferred by the act of 1809, and therefore an infringement of that portion of the tenth section of the first article of the Constitution of the United States, which prohibits the passing of'laws by the States impairing the obligation of contracts. On the other hand, it is insisted for the defendants, that the phrase “ State taxes,” contained in the law of 1809, was and is applicable to a well-known distinction between taxes for general revenue, and payable as a portion of the public fisc, and county, or township dues levied by lo'cal power, and applicable only to purposes which were local and limited in their character. . The latter would seem to be the interpretation adopted by the courts of Ohio of the two laws in question; they must have been regarded as reconcilable and consistent with each other, to justify the dismission of plaintiff’s bill on .the merits. But whether these statutes of Ohio be reconcilable with each other, or in conflict with themselves and with the above-cited article of the Constitution, is a matter into which; according to the record before us, we do not think it material to inquire. The pleadings in this cause nowhere allege any right, title, or interest derived from or under any authority of the United Statés, nor the violation of any right, title, or interest §o derived, nor any violation of the Constitution, nor of any right, guarantied thereby. Nothing of.this kind is apparent either on the face of the decree of the Court of Common Pleas, or of that of the Supreme Court, of Ohio. The course of decision here, as to the requisites apparent upon the record to invest this court with jurisdiction under the twenty-fifth section of the Judiciary Act, would seem too clear, and too well established, to' be misunderstood; but whether understood or regarded by parties or by counsél, this court cannot permit the disturbance of á settled rule of' practice, whereby -great confusion and in
 
 *743
 
 convenience would of necessity be induced. Some of the positions ruled by this court, upon the subject of jurisdiction, under the twenty-fifth section, will be here adverted to. In Montgomery.
 
 v.
 
 Hernandez, 12 Wheat, 129, it is said that
 
 “
 
 the' Supreme Court hás no jurisdiction under the twenty-fifth section of the Judiciary Act; unless the right, title, privilege, or exemption under a statute or commission of the United States be
 
 specially set up,
 
 by 'the party claiming it, in the State court, and the decision be against the same.” In the case of Crowell
 
 v.
 
 Randell, 10 Peters, 392, the court, after reviewing all the previous cases touching the question of jurisdiction under the twenty-fifth section of the Judiciary Act, some of which cases were calculated to shed doubt upon the meaning of the statute, lays down these clear and well-defined propositions. That to give this court jurisdiction, two things should have occurred and be apparent on the record, — first, that some one of the questions - stated in the section
 
 did arise
 
 in the court below; and secondly, that a decision was actually made thereon by the same .court, in' the manner required by. the section. That if both these do not appear on the record, the appellate jurisdiction fails. It is not sufficient to show that such a question
 
 might have occurred, or such a decision might have
 
 -
 
 been made in the court below.
 
 It must be demonstrable,
 
 that they did exist, and were decided.
 
 In the case of McKinney
 
 v.
 
 Carroll, 12 Peters, 66, it is said, two things must be
 
 apparent on the record,
 
 to give the Supreme Court jurisdiction under the twenty-fifth section of the Judiciary Act; — first, that some one of the questions stated in that section did arise in the State court; and secondly, that a decision was actually made thereon in the manner required by the section.
 

 The same positions aré ruled, almost in the identical words, in the cases of Coons
 
 v.
 
 Gallaher, 15 Peters, 18, and of Fulton
 
 v,
 
 McAffee, 16 Peters, 149.
 

 In the last case which will be here cited, that of Armstrong
 
 v.
 
 The Treasurer of Athens County, reported in 16 Peters, 281, this subject of jurisdiction.under the twenty-fifth section of the Judiciary Act appears to have been still more elaborately ■treated than it had been-previously done, and the law concerning it propounded in a series of six plain propositions; they are are as follow. That to give jurisdiction, it must appear on the
 
 record itself
 
 that the case is one embraced by the section, —first, either by express averment, or by necessary intendment in the pleadings in the case; secondly, by directions given by the court, and stated in the exceptions; or, thirdly, when the proceedings are according to the laws, of Louisiana, by the statement of .the facts, and of the decision as is usually made in
 
 *744
 
 such cases by the court; fourthly, it must be entered óh the record of the proceedings of the appellate' court, in cases where the record shows that such ¿ point may have arisen and may have been decided, that it was a fact raised and decided, and this entry must appear to have been made by order of the court or by the presiding judge by order of the court, and certified by the clerk as.part of the record in the State court; or, fifthly, in proceedings in equity, it may be stated iii the body of the final decree of the State court ; or, sixthly, it. must appear, from the record, that the question was necessarily involved in the decision, and that the. State" court could, not have given the judgment or decree without deciding it.
 

 Thus, with' respect to. the construction proper to be given to the twenty-fifth section of the Judiciary Act, and with respect also, to the.modes of presenting upon the records from the State courts the questions arising under that section, which can properly draw the decisions of. those courts within the cognizance of this tribunal," we find a series of adjudications embracing and settling the law as to both these subjects. The rules and principles settled by those, adjudications, are entirely approved, and could not be disturbed without much inconvenience and mischief. Recurring to. the record of the case under consideration, and regarding it as deficient in all the requisites to give jurisdiction, according to the express demands of the authorities cifed, we therefore adjudge and order, that the writ of error in this case be dismissed.
 

 Order.
 

 . This cause came on to be heard on the transcript of the record of the Supreme Court of the-State of Ohio, and was argued by counsel. On consideration whereof, and. it appearing to the court here, from an inspection of the transcript of the record, that there is nothing upon its face to give this court jurisdiction in the case, it is thereupon now here' ordered and adjudged by this court, that this cause be, and the same ‘is hereby,-dismissed for the want of jurisdiction.