Exeter District Court
No. 6382

State of New Hampshire v. Walter Royal

State of New Hampshire v. Michelle Morrissette

May 31, 1973

*Warren B. Rudman,* attorney general, and *Robert V. Johnson II,* assistant attorney general (*Mr. Johnson* orally), for the State.

*Anthony McManus,* by brief and orally, for Walter Royal.

*William H. M. Beckett* for Michelle Morrissette filed no brief.

GRIMES, J. These two cases, which were consolidated on appeal, involve the constitutionality of RSA 573:4 which prohibits the mutilation of the flag.

Defendant Royal was found guilty by the superior court of the charge of "mutilation of the United States Flag" for wearing as a patch over a hole in the sleeve of his jacket the American flag sewn upside down with another patch sewn partially over it. He moved to dismiss for failure of the complaint to state clearly the nature of the charge. Upon denial of this motion, he moved to dismiss on the grounds of unconstitutionality of the statute due to vagueness, or as a violation of the first amendment either on its face or only as applied to him. All questions of law arising out of defendant's exceptions to the denial of these motions were reserved and transferred by *Keller,* C.J.

Defendant Morrissette, charged with "Mutilation of National Flag", was found guilty by the Exeter District Court for casting contempt upon the flag by "affixing said flag to the seat of her trousers". The questions of law raised by

her contentions that her conduct is protected by the first and fourteenth amendments and that RSA 573:4 is unconstitutional were transferred by *Gage,* J.

RSA 573:4 states: "Mutilation, etc. No person shall publicly mutilate, trample upon, defile, deface, or cast contempt upon, either by words or acts, any of said flags, standards, colors, or ensigns, whether the same are public or private property." " [A]ny of said flags" refers to the flag of the United States or any State or "any flag or ensign evidently purporting to be either of said flags . . . ." RSA 573:1. Clearly, the flags used by defendants came within the language of the statute.

The flag is the symbol of those rights which, because they are fundamental to our society, are secured from the tyranny of the majority by incorporation in the constitution and entrusted to the courts for their defense. They dishonor the flag most, therefore, who seek to deny those rights to others. Among those rights is the right of free speech which carries with it the right to dissent from and disagree with the very principle which guarantees that right, including the right to express opinions about the flag which are defiant or contemptuous so long as they are not such as to provoke an immediate breach of the peace. *See West Virginia St. Bd. of Educ. v. Barnette,* 319 U.S. 624, 87 L. Ed. 1628, 63 S. Ct. 1178 (1943); *Gooding v. Wilson,* 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972).

Thus in *Street v. New York,* 394 U.S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354 (1969), the Supreme Court struck down a conviction because it could have been based on that part of a statute which prohibited defendant's use of words contemptuous of the flag. Under this ruling, that aspect of RSA 573:4 dealing with words, unless construed as applying only to "fighting words", is of doubtful constitutionality. *State v. Chaplinsky,* 91 N.H. 310, 321, 18 A.2d 754, 762 (1941), *aff'd sub nom. Chaplinsky v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942); *Gooding v. Wilson supra.* We need not concern ourselves with the construction of the "by words" part of the statute at this time, however, for whatever its constitutional status may be, it would not affect the validity of the remainder of the section. *Fernald v. Bassett,* 107 N.H. 282, 285, 220 A.2d 739, 742 (1966); *State v. Chaplinsky,* 91

N.H. at 312, 18 A.2d at 757 (1941). In each of our cases, the defendant is charged with the title of the statute, and therefore we must consider what prohibitions within the statute apply to defendant's proven conduct.

In each of the cases before us, the complaints allege specific acts as constituting violations of the statute. No words are alleged and there is no evidence that either defendant spoke so that neither conviction could have in any part been based on the use of words. *Cf. Street v. New York supra.*

In considering the statute for the purpose of this case, therefore, we shall treat it as though it read "or cast contempt upon, by acts, any of said flags . . . ."

If "or cast contempt . . . by . . . acts" (RSA 573:4) is intended to prohibit all acts showing contempt, the statute would face constitutional difficulty not only because of vagueness but also because of overbreadth in relation to the first amendment. It has been said that some statutes could be interpreted to prohibit any breach of flag etiquette, regardless of intent, or all gestures directed at the flag. *See Goguen v. Smith,* 471 F.2d 88 (1st Cir. 1972).

Our statute is more narrowly drawn than some flag statutes. It deals only with the flag itself or any "flag or ensign evidently purporting to be" the flag. *State v. Cline, post* at 245, decided this date. Also, as we construe it, our statute prohibits only acts of mutilation and defilement inflicted directly upon the flag itself and does not prohibit acts which are directed at the flag without touching it. The statute enumerates specific acts of flag desecration, namely "mutilate, trample upon, defile, deface", all of which involve physical acts upon the flag. The general term "cast contempt" follows these enumerated specific acts. We hold that the phrase "or cast contempt by . . . acts" as used in RSA 573:4 is limited to physical abuse type of acts similar to those previously enumerated in the statute. 2 Sutherland, Statutory Construction § 4909 (3d rev. ed. Horack 1943); *State v. Small,* 99 N.H. 349, 111 A.2d 201 (1955); *State v. N.H. Gas & Electric Co.,* 86 N.H. 16, 163 A. 724 (1932).

The words "cast contempt" are directed to the effect of the prohibited acts and not at the intention of the actor. Violations do not therefore depend upon the attitude or

politics of the actor, but all who do the same act are treated alike regardless of their attitude. *Cf. Hodsdon v. Buckson,* 310 F. Supp. 528 (D. Del. 1970). The specific acts prohibited or any similar acts upon the flag which ordinary men would know cast contempt upon it are within the orbit of the prohibition without regard to the purpose of the person committing the act. Our statute therefore avoids the difficulties found in the unconstrued Massachusetts statute which punished one who "treats contemptuously" the flag. *Goguen v. Smith,* 471 F.2d 88, 104 (1st Cir. 1972).

Under our statute thus construed, "one does not need to guess at what is prohibited", *State v. Chaplinsky,* 91 N.H. at 321, 18 A.2d at 762 (1941), nor does it leave "unfettered discretion" in the hands of the police. *Pappachristou v. City of Jacksonville,* 405 U.S. 156, 168, 31 L. Ed. 2d 110, 119, 92 S. Ct. 839, 846 (1972); *Grayned v. City of Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972); *Goguen v. Smith supra.* It therefore is not vague, nor for the reasons hereinafter stated is it overbroad with respect to first amendment rights. *Hoffman v. United States,* 445 F.2d 226 (D.C. Cir. 1971).

Although neither of these defendants claims to have been saying or attempting to say anything by his conduct, nevertheless some forms of flag desecration and casting contempt by acts may be forms of symbolic expressions. The United States Supreme Court has not yet defined what limitations may be placed upon symbolic speech, but it seems clear that it does not enjoy the same degree of protection as does pure speech. *Cox v. Louisiana,* 379 U.S. 536, 555, 13 L. Ed. 2d 471, 484, 85 S. Ct. 453, 464 (1965). *See also Street v. New York supra; Cowgill v. California,* 396 U.S. 371, 372, 24 L. Ed. 2d 590, 90 S. Ct. 613, 614 (1970) (Harlan, J., concurring). Because conduct such as the defendants' might be used by others as an attempt to speak symbolically, we will consider defendants' attack upon the constitutionality of the statute on its face. *Gooding v. Wilson supra; Goguen v. Smith supra.*

When speech and nonspeech elements are contained in the same conduct, it has been held that under certain circumstances the State may regulate the nonspeech element even though there is an incidental limitation on the speech element.

*United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). The O'Brien test for a proper governmental regulation is if it is within the constitutional power of government, if it furthers an important governmental interest which is unrelated to the suppression of free expression, and if the incidental restriction on first amendment freedom is no greater than necessary. We think our statute meets this test. Clearly, protection of the flag falls within the police power of the State and defendants do not seriously contend otherwise. *State v. Cline supra.*

The State has an interest in protecting the physical integrity of the flag *(State v. Cline supra),* in promoting patriotism and love of and pride in country *(Halter v. Nebraska,* 205 U.S. 34, 51 L. Ed. 696, 27 S. Ct. 419 (1907); *State v. Hoskin,* 112 N.H. 332, 295 A.2d 454 (1972) and in preventing breaches of the peace *(Halter v. Nebraska supra; Chaplinsky v. New Hampshire supra; Gooding v. Wilson supra).* Our statute furthers all three of these state interests. In view of what has been said in *Cline* and here, we need not dwell on the first two interests.

As to preventing breaches of the peace, we are dealing here with acts rather than words as in *Chaplinsky* and in *Cohen v. California,* 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971). Some of the acts prohibited in public are specifically defined, *i.e.* mutilation, trampling, defiling and defacing. The others which reasonable men would agree cast contempt upon the flag must be of a similar nature. The legislature therefore was able to forecast in advance the type of acts that would fall within the scope of the prohibition and make a determination that such acts if done in public would be likely to cause a breach of the peace. We cannot say that this determination was unreasonable. As was said in *Halter v. Nebraska,* 205 U.S. at 41, 51 L. Ed. at 701, 27 S. Ct. at 421 (1907): "Hence, it has often occurred that insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot." We cannot say that it was unreasonable for the legislature to assume that this feeling about our flag is so prevalent that the commission of the prohibited acts anywhere, anytime in public would create a danger to the public peace.

All three of these state interests are unrelated to the suppression of free expression. The statute as we have construed it is directed at acts upon the flag and not "at the expression of and mere belief in particular ideas". *Goguen v. Smith,* 471 F.2d at 102 (1973). The commission of the same act upon the flag would not be treated differently depending upon the attitude of the actor, for the prohibited acts as we have said are proscribed without regard to the attitude of the person performing them.

The statute also meets the last *O'Brien* test in that any incidental restriction on first amendment freedom is no greater than is essential to the furtherance of the state interests. The statute as we have said does not focus upon any particular attitude or belief. Rather, it is the act committed in public that furnishes the basis for the offense. Persons are free under this statute to express any ideas or convey any message they wish. They are prohibited only from performing the particular acts proscribed by the statute.

We hold that the complaints in each case clearly and fully inform the defendants what they are charged with and state an offense under RSA 573:4 which we hold to be constitutional.

The evidence is sufficient in each case to support the convictions. Royal wore the flag as a patch over a hole in the sleeve of his jacket. Since another patch was sewn partially over the flag, the flag was thus mutilated and defaced contrary to the prohibitions of the statute. Morrissette was wearing a flag on the seat of her trousers. This is an act similar to those specifically prohibited which ordinary men would all agree casts contempt upon the flag. *State v. Kasnett,* 30 Ohio App. 2d 77, 283 N.E.2d 636 (1972).

In each case, the order is

*Exceptions overruled.*

All concurred.