**Walter C. ROYAL**

v.

**SUPERIOR COURT OF NEW HAMP-SHIRE ROCKINGHAM COUNTY.**

Civ. A. No. 74–12.

United States District Court,
D. New Hampshire.

June 5, 1975.

Richard S. Kohn, New Hampshire Civ. Liberties Union, Concord, N. H., for plaintiff.

Robert V. Johnson, II, Asst. Atty. Gen., State of New Hampshire, Concord, N. H., for defendant.

## MEMORANDUM OPINION

BOWNES, District Judge.

This is a petition for a writ of habeas corpus.

On October 8, 1970, at approximately 12:00 Midnight, the car in which petitioner was a passenger was stopped for speeding by a radar unit of the Portsmouth, New Hampshire, Police Department. When petitioner alighted from the vehicle, a police officer noticed that he had a small American flag patch sewn onto the sleeve of his jacket which was partially covered by another patch. At that point, petitioner was placed under

arrest and taken to the Portsmouth Police Station. While at the Police Station and after being given his Miranda warnings, petitioner told the police that he had sewn the flag onto his jacket sleeve in order to be "cool."

On October 9, 1970, petitioner was charged with violating N.H. RSA 573:4 in that he did:[1]

wear on the right sleeve of his outergarment the flag of the United States of America, said flag being used for the sole purpose as a patch to cover a hole in said outergarment, said flag being upside down and with another patch sewn partially over it.

On October 13, 1970, after pleading "not guilty," petitioner was convicted of violating N.H. RSA 573:4 in Portsmouth District Court and sentenced to four months of incarceration and ordered to pay a fine of $300. The sentence was stayed upon his appeal to Rockingham County Superior Court for a trial *de novo*.

Petitioner argued before the Superior Court that the complaint should be dismissed because N.H. RSA 573:4 was unconstitutional on its face and as applied to him. On June 16, 1971, petitioner was found guilty by the Superior Court and imposition of sentence was stayed pending appeal to the New Hampshire Supreme Court.

Once again, petitioner argued that the complaint should be dismissed "on the grounds of unconstitutionality of the statute due to vagueness, or as a violation of the first amendment either on its face or only as applied to him." State v. Royal, 113 N.H. 224, 225, 305 A.2d 676, 678 (1973). The New Hampshire Supreme Court rejected all of petitioner's contentions and upheld his conviction. *Id.* at 230, 305 A.2d 676.[2]

On December 12, 1973, petitioner was sentenced to serve one week in the House of Corrections at Brentwood, New Hamshire, and to pay a fine of $150. Petitioner then filed a motion for stay of execution in this court while he sought relief through a petition for a writ of habeas corpus. The stay was granted and, on January 11, 1974, a petition for a writ of habeas corpus was filed with this court.

### THE LAW

Litigation concerning the constitutionality of flag use and flag desecration statutes is approaching epidemic proportions. *See* Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (White, J., concurring at 583–584 n. 1). The flag has become "an object of youth fashion and high camp . . . . " *Id.* at 574, 94 S.Ct. at 1247. In addition, the flag has become the symbol towards which national, political and social frus-

---

1. N.H. RSA 573:4 provides:

No person shall publicly mutilate, trample upon, defile, deface, or cast contempt upon, either by words or acts, any of said flags, standards, colors, or ensigns, whether the same are public or private property.

On November 1, 1973, New Hampshire amended the flag desecration statute to now read as follows:

A person is guilty of a misdemeanor if he

I. purposely places any unauthorized inscription or other thing upon any flag of the United States or of any state of the United States; or

II. knowingly exhibits any such flag knowing the inscription or other thing to be unauthorized; or

III. for purposes of advertising a product or service for sale or free distribution,

affixes a representation of the flag of the United States or of a state of the United States to such product or on any display whereon such product or service is advertised; or

IV. purposely or knowingly mutilates or defiles any such flag; or

V. having been presented with a flag in behalf of this state and using such flag in violation of this section, refuses to comply with a request by the governor that such flag be returned. N.H. RSA 646:1 (Supp. 1975).

2. The *Royal* Court recognized that the statutory ban on words which were contemptuous of the flag was of "doubtful constitutionality" and interpreted the statute to prohibit only that conduct which is physically abusive of the flag. *Id.* at 226–227, 305 A.2d 676.

tration and anger has been directed. *Goguen, supra;* Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974); Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969).

In two recent opinions, *Goguen, supra,* and *Spence, supra,* the Court attempted to delineate the constitutional limits on the state's power to criminally regulate "flag etiquette." Despite the Court's attempt to reduce the constitutional tension created by the First Amendment coming into conflict with the state's desire to protect the "pristine purity" of the flag, *stare decisis* does not provide a determinative answer to the issues raised. Instead, each statute and factual background must be examined independently to determine whether the state has transgressed the constitutional boundaries erected by the First Amendment.

The petitioner challenges the constitutionality of his conviction on three separate grounds. First, that, under these facts, his conduct is immunized from criminal prosecution by the First Amendment to the United States Constitution. Second, that the statute is unconstitutionally vague; and third, that, as construed by the New Hampshire Supreme Court, the statute is void for overbreadth.

The first step of analysis is to determine whether petitioner's conduct is "so intertwined with expression" that First Amendment considerations come to the fore. *Spence, supra,* 418 U.S. at 410, 94 S.Ct. 2727; Cowgill v. California, 396 U.S. 371, 372, 90 S.Ct. 613, 24 L.Ed. 2d 590 (1970) (Harlan, J., concurring).

At first blush, it would appear that the "communicative connotations" of the flag enshrouds all conduct which makes use of the flag with First Amendment protection. Goguen v. Smith, 471 F.2d 88, 99–100 (1st Cir. 1972). But the presence of the flag does not, by itself, trigger the First Amendment. Instead, it is "necessary to determine whether [petitioner's] activity was sufficiently imbued with elements of communica-

tion to fall within the scope of the First and Fourteenth Amendments, . . . ." *Spence, supra,* 418 U.S. at 409, 94 S.Ct. at 2730. The question, therefore, is not whether petitioner was prosecuted for descecrating the flag, but whether he was prosecuted "for the expression of an idea through activity." *Id.* at 411, 94 S.Ct. at 2730. The First Amendment prohibits only the latter.

In order to determine whether activity is "protected expression," the court must inquire into the nature of petitioner's activity "combined with the factual context and environment in which it was undertaken, . . . ." *Id.* at 410, 94 S.Ct. at 2730.

■ Although the record before me is scanty, there is no evidence that petitioner was intending to convey a "particularized message" when he used the American flag as a sleeve patch, with another patch partially sewn over it. Nor is there any evidence from which it can reasonably be inferred that petitioner intended to publicly convey any message or idea at all.

Petitioner stated that he used the flag as a sleeve patch because he thought it was a "cool" thing to do. While the word "cool" may be a term of art for a certain group, its meaning, if any, is at best unclear. For some people, "cool" may convey being an "in" person; to others, it approaches the "mindless nihilism" proscribed by *Spence. Id.* at 410, 94 S.Ct. 2727. In any event, the desire to be "cool" does not have a talismanic effect which gives First Amendment protection to conduct which is not otherwise protected.

The distinction between *Spence* and the case at bar is clear. *Spence* had superimposed the peace symbol on the flag in order "to associate the American flag with peace instead of war and violence . . . . [I]t was a pointed expression of anguish by appellant about the then current domestic and foreign affairs of his government. An intent to convey a particularized message was present, and in the surrounding circumstances the

likelihood was great that the message would be understood by those who viewed it." *Spence, supra,* 418 U.S. at 408 and 410–411, 94 S.Ct. at 2729; *see also* Cline v. Rockingham County Superior Court, 502 F.2d 789, 791 (1st Cir. 1974).

Unlike *Spence* and *Cline,* petitioner did not display the flag in order to protest any facet of national policy. Moreover, petitioner's message was ambiguous at best. While the medium may be the message, there must be some message in order for the First Amendment to become operative. It is worth noting that, if petitioner was intending to convey a message by wearing the flag as a patch on his sleeve, he did his best to minimize the effectiveness of its display by sewing another patch partially over the flag.

Although I believe that "in the nebulous realm of symbolic speech," *Goguen, supra,* 471 F.2d at 104, courts should be most sensitive to the myriad forms of symbolic expression, the facts of this case lead only to the conclusion that petitioner wore the American flag on his sleeve for the sole purpose of patching a hole in it.

■ I do not believe that any and all flag defilement or mutilation constitutes speech. As the Court stated in United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), and reiterated in *Spence, supra,* 418 U.S. at 409, 94 S.Ct. at 2730: "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

As an adjunct, I add that an apparently limitless variety of flag conduct cannot be deemed "protected expression" simply because the actor makes use of the American flag. It is essential that petitioner establish that he was attempting to convey some idea or message through his conduct.

Petitioner was prosecuted not for the expression of an idea, but because he defiled the American flag by using it as a sleeve patch and sewing over it another patch. To enshroud petitioner's activity with First Amendment protection is to blithely declare that, in the absence of a possibility that the actor's conduct will cause a breach of the peace, all state flag desecration statutes are unconstitutional. I do not believe that the First Amendment or the cases mandate this result. I find that by using the American flag as a patch petitioner was not engaged in protected expression and that he was subject to the criminal provisions of N.H. RSA 573:4.

■ I next consider petitioner's vagueness challenge.

This case is unlike *Goguen, supra,* 415 U.S., for here, there is a limiting State Supreme Court decision. *See id.* (White, J., concurring at 588–589 n. 3, 94 S.Ct. 1242). The New Hampshire Supreme Court has interpreted the statute so that it only proscribes conduct which affects the physical integrity of the flag and which "ordinary men would know cast[s] contempt upon it . . . ." *Royal supra,* 113 N.H. at 228, 305 A.2d at 679. *See also Goguen, supra,* 415 U.S. at 582–583 n. 31, 94 S.Ct. 1242. In addition, the statute as interpreted is an almost identical counterpart to the federal flag desecration statute which has been held to satisfy constitutional standards with regard to vagueness. 18 U.S.C. § 700 (Supp. 1975); Joyce v. United States, 147 U.S.App.D.C. 128, 454 F.2d 971, (1971), cert. denied 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972); 90th Cong. 2d Sess., U. S. Code and Cong. Admin.News at p. 2509 (1968). The statute as interpreted "provides the requisite degree of certainty to provide men of ordinary intelligence with fair notice as to what conduct is proscribed." State v. Kool, 212 N.W.2d 518, 519 (Iowa 1973).

■ Finally, petitioner contends that, in the light of *Spence,* N.H. RSA 573:4, as interpreted by the New Hampshire Supreme Court, is void for overbreadth.

I agree with petitioner that the New Hampshire Supreme Court's decision in *Royal* cannot withstand constitutional attack in *Spence's* aftermath. *Royal* held that "[t]he commission of the same act upon the flag would not be treated differently depending upon the attitude of the actor, for the prohibited acts as we have said are proscribed without regard to the attitude of the person performing them." *Id.* at 230, 305 A.2d at 680. This interpretation is in direct conflict with *Spence.* The ultimate holding in *Spence* was that there is certain flag-related conduct which receives First Amendment protection despite the fact that the actor's conduct affects the physical integrity of the flag. As I read the New Hampshire Supreme Court's decision in *Royal*, the State could prosecute any person whose conduct affects the physical integrity of the flag despite that person's intent to convey a "particularized message." This is not the law in light of *Spence.*

Petitioner's attack must fail, however, because the statute, under which he was convicted, has been repealed. *See* N.H. RSA 646:1 (Supp. 1975), see note 1, *supra.*

The First Circuit recognizing that the overbreadth argument is a "powerful weapon which, if improperly used, may contravene principles of federalism," *Goguen, supra,* 471 F.2d at 97, established judicial guidelines in suits of this nature. The court suggested that:

> In the context of a federal habeas corpus proceeding a state criminal statute should not be ruled unconstitutional on its face as overbroad unless (1) the area affected by it includes a large proportion of First Amendment activities, (2) it possesses the potential for a substantial number of impermissible applications, and (3) immediate and effective excision of the statute's impermissible applications is not foreseeable without continued interruptions of First Amendment freedoms. *Id.* at 98.

Since the statute has been repealed, I find that petitioner is unable to satisfy the second *Goguen* requirement. His overbreadth attack must fail.

For the foregoing reasons, petitioner's writ of habeas corpus is denied.

So ordered.