Walter C. ROYAL, Peti-
tioner-Appellant,

v.

SUPERIOR COURT OF NEW HAMP-
SHIRE, ROCKINGHAM COUNTY,
Respondent-Appellee.

No. 75–1260.

United States Court of Appeals,
First Circuit.

Argued Oct. 9, 1975.

Decided March 12, 1976.

Richard S. Kohn, Washington, D.C., with whom Anthony McManus, Dover, N.H., were on brief for petitioner-appellant.

Edward N. Damon, Concord, N.H., with whom Warren B. Rudman, Atty. Gen., and Robert V. Johnson, II, Asst. Atty. Gen., Chief, Crim. Div., Concord, N.H., were on brief for respondent-appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Walter C. Royal was arrested nearly six years ago while wearing upside down upon his sleeve a small American flag that was partly covered by another patch. He was convicted under New Hampshire's then flag desecration statute, N.H.Rev.Stats.Ann. ch. 573:4 (1955).[1] These events took place at a time when the flag was " 'an object of youth fashion and high camp' ", *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605, 612 (1974), widely associated with the nation's policies in Indochina, *see Spence v. Washington*, 418 U.S.

---

1. The statute provided:
 "573:4 Mutilation, etc. No person shall publicly mutilate, trample upon, defile, de-

face, or cast contempt upon, either by words or acts, any of said flags [of the United States or of any state of evidently purporting to be

405, 410, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842, 846 (1974). Since then the very broad state statute under which petitioner was convicted has been repealed, N.H.Rev.Stats.Ann. ch. 646:1 (Supp.1975); [2] contempt language equivalent to that on which the conviction was partially based has been held unconstitutionally vague, *Goguen, supra;* [3] and new standards for examining flag legislation against first amendment claims have emerged, *Spence, supra; see Cline v. Rockingham County Superior Court,* 502 F.2d 789 (1st Cir. 1974).

The rather meager facts before us pertaining to Royal's offense appear in a stipulation in the district court, as follows: [4]

"1. On October 8, 1970, at approximately twelve o'clock midnight, Walter C. Royal was a passenger in a motor vehicle operated in Portsmouth, New Hampshire, the motor vehicle having been stopped by Police Officer Paul S. Herrmann of the Portsmouth Police Department for a possible motor vehicle violation. Mr. Royal got out of the motor vehicle. Officer Herrmann observed Mr. Royal to be wearing an Army fatigue jacket, on the right sleeve of which was attached a flag of the United States of America. Under the flag was a hole in the jacket. The flag was attached to the jacket in an upside down position. Another patch was sewn partially over the flag.

2. On the date of his arrest, Mr. Royal, having been informed of his rights stated that he had sewn the flag on the sleeve of his jacket as a patch. Mr. Royal further stated that he did this because he 'thought it was cool.'

3. The flag sewn on Mr. Royal's jacket contained 49 stars and 13 stripes."

(citations omitted) By a Portsmouth District Court complaint petitioner was charged with "Mutilation of the United States flag" in violation of chapter 573:4.[5] The complaint alleged that he had worn

"on the right sleeve of his outergarment the flag of the United States of America, said flag being used for the sole purpose as a patch to cover a hole in said outergarment, said flag being upside down and with another patch sewn partially over it." [6]

He was found guilty, first by the Portsmouth District Court and then, after a jury-waived trial de novo, by the Rockingham County Superior Court. The Superior

---

such] . . . whether the same are public or private property."
N.H.Rev.Stats.Ann. ch. 573:4 (1955). The maximum penalty was set at thirty days' imprisonment plus a fifty dollar fine. *Id.* ch. 573:5.

**2.** Chapter 573:4 was repealed as part of a general revision of the flag-protection provisions in November, 1973. The flag desecration provision now reads:

"A person is guilty of misdemeanor if he
. . . . . .
IV. purposely or knowingly mutilates or defiles any such flag [of the United States or of any state] . . .."
N.H.Rev.Stats.Ann. ch. 646:1 (Supp.1975).

**3.** The Massachusetts statute considered in *Goguen* provided in relevant part:

"Whoever publicly mutilates, tramples upon, defaces or treats contemptuously the flag of the United States . . ., whether such flag is public or private property . ., shall be punished by a fine of not less than ten nor more than one hundred dollars or by imprisonment for not more than one year, or both."
Mass.Gen.Laws Ann., ch. 264, § 5, *quoted in Smith v. Goguen,* 415 U.S. 566, 569 n. 3 94 S.Ct. 1242, 1245, 39 L.Ed.2d 605, 609 (1974). We see no constitutionally significant difference between the "treats contemptuously" language of the Massachusetts statute and the "cast contempt" language of chapter 573:4.

**4.** Neither the state trial transcript nor petitioner's jacket, which was the state's Exhibit 1, is included in the record. From the state courts we have a document summarizing the state trial proceedings, Reserved Case, *State v. Royal* (Rockingham County Superior Court, 1971), and the New Hampshire Supreme Court's published opinion, *State v. Royal,* 113 N.H. 224, 305 A.2d 676 (1973).

**5.** Reserved Case, *State v. Royal,* at 1 (Rockingham County Superior Court, 1971).

**6.** *Id.* at 1–2; Stipulation of Facts, ¶ 4.

Court declared, "It is found that the respondent publicly defiled, and he also publicly cast contempt upon, the flag of the United States of America. It is found that the defendant is guilty as charged."[7] Sentence was stayed pending appeal.

The New Hampshire Supreme Court overruled Royal's exceptions and confirmed the conviction. *State v. Royal,* 113 N.H. 224, 305 A.2d 676 (1973).[8] Stating that Royal was charged with "the title of statute," the court considered "what prohibitions within the statute apply to defendant's proven conduct." *Id.* at 678. It then focused on the portion of chapter 573:4 that reads: "or cast contempt upon." On the assumption that words were not at issue,[9] the court treated that portion of the statute "for the purpose of this case . . . as though it read 'or cast contempt upon, by acts, any of said flags . . ..' " *Id.* at 678. Recognizing that even this language as it stood "would face constitutional difficulty not only because of vagueness but also because of overbreadth in relation to the first amendment . . .", *id.* at 679, the court construed it to prohibit only "physical abuse type of acts similar to those previously enumerated in the statute. . . ." *Id.* The court added, "The specific acts prohibited or any similar acts upon the flag which ordinary men would know cast contempt upon it are within the orbit of the prohibition without regard to the purpose of the person committing the act." *Id.* Applying this construction to Royal, the court found the evidence sufficient to support the conviction:

7. Reserved Case, at 2.

8. Royal's appeal was consolidated with that of one Morrissette, who, like the petitioner in *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974), was convicted for wearing the flag on the seat of her pants.

9. The court stated:
"No words are alleged and there is no evidence that either defendant spoke so that neither conviction could have in any part been based on the use of words. *Cf. Street v. New York,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969)."
305 A.2d at 678. The court apparently considered it immaterial that Royal had told the

"Royal wore the flag as a patch over a hole in the sleeve of his jacket. Since another patch was sewn partially over the flag, the flag was thus mutilated and defaced contrary to the prohibitions of the statute."

*Id.* at 680.[10]

Following the appeal, Royal was sentenced to one week in prison and a fine of $150, with execution stayed pending his filing of this federal habeas corpus petition. The district court thereafter denied the petition, *Royal v. Superior Court,* 397 F.Supp. 260 (D.N.H.1975), holding: (1) that Royal was not engaged in protected expression in treating the flag as he did; (2) that the statute was not vague as construed by the New Hampshire Supreme Court; and (3) that while the statute was overbroad on its face even as construed, Royal could not raise facial overbreadth as a defense, since the statute had been repealed and had no "potential for a substantial number of impermissible applications . . . ." *Goguen v. Smith,* 471 F.2d 88, 98 (1st Cir. 1972), *aff'd on other grounds,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

■ While agreeing with much in the district court's opinion, we disagree that the New Hampshire Supreme Court's curative efforts after Royal's conviction were able to offset chapter 573:4's fatal vagueness as to him. Accordingly we reverse on the ground that Royal was denied due process of law, having been charged and convicted under a statute so vague as not to have provided, in

arresting officer that he thought wearing the flag as he did was "cool". Stipulation of Facts, ¶ 2.

10. The court also found sufficient evidence to support Morrissette's conviction:
"Morrissette was wearing a flag on the seat of her trousers. This was an act similar to those specifically prohibited which ordinary men would all agree casts contempt upon the flag. *State v. Kasnett,* 30 Ohio App.2d 77, 283 N.E.2d 636 (1972)."
305 A.2d at 680–81; *cf. Smith v. Goguen,* 415 U.S. 566, 570 n.4, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605, 610 (1974).

advance, an intelligible standard against which to measure his guilt or innocence.

It should be remarked that there was confusion throughout the state proceedings as to what statutory prohibition or prohibitions Royal was charged with and found guilty of violating. The complaint charged him with flag "mutilation". However, the Superior Court and the state Supreme Court apparently took "mutilation" to be a generic term that embraced both mutilation as such and all the other prohibited acts of trampling upon, defiling, defacing, and casting contempt upon the flag. The Supreme Court explained this approach by calling "mutilation" the "title of the statute," 305 A.2d at 678, although the actual heading of chapter 573:4 is "Mutilation, etc." Followed as the heading is by a text in which "mutilate" is but the first of five enumerated acts, it is hard to see how mutilation can be read to subsume all the other listed forms of flag desecration. *Cf. Joyce v. United States,* 147 U.S.App.D.C. 128, 454 F.2d 971, 976–77 (1971), *cert. denied,* 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972) (charge under federal desecration statute must connect specific acts with the conjunctive "and" before evidence can be admitted as to more than one act).

Be that as it may, the Superior Court, taking a general view of the charge, mentioned defilement and casting contempt, not mutilation, as the acts of which Royal was guilty.[11] The Supreme Court then upheld

the conviction, saying, however, that the evidence showed mutilation and defacement. This shift of grounds on appeal is difficult to explain. Presumably the state Supreme Court did not intend to put the conviction on a new factual basis without regard for the trial court's findings,[12] but rather viewed mutilation and defacement as forms of casting contempt, as it interpreted that term in its opinion, and meant to uphold the conviction on that theory.[13] In any case the shifting theories underlying the charge, the conviction, and the decision on appeal, leave considerable doubt as to the precise nature of Royal's offense and of the proof and legal arguments that might have been able to establish innocence.

If we add to the foregoing uncertainties the plain and acknowledged infirmity of the statute as written, we find it hard to say that Royal was charged and convicted under a statute providing a reasonably ascertainable standard of guilt. The "cast contempt" language of chapter 573:4 was, as all now concede, unconstitutionally vague, and, at the time of Royal's trial and conviction that language was as yet devoid of any narrowing state court construction. "Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law." *Goguen,* supra, at 575, 94 S.Ct. at 1248, 39 L.Ed.2d at 613. And

---

**11.** We interpret the trial court's finding that Royal was "guilty as charged" to be a conclusion, drawn from the specific findings of defiling and casting contempt, that Royal was guilty of violating chapter 573:4. There is no indication that the trial court found the specific act of mutilation; its only reference was to the two other of the statute's prohibitions.

**12.** *Cf. State v. Inselburg,* 330 A.2d 457 (N.H. 1974).

"In reviewing on appeal a trial court's determination, the question presented is whether there is evidence in the record from which a reasonable person could reach the conclusion which the trial court did."

*Id.* at 461. *See also Hoffman v. United States,* 144 U.S.App.D.C. 156, 445 F.2d 226, 229 n.10 (1971).

**13.** The following passage supports this view:

"The words 'cast contempt' are directed to the effect of the prohibited acts and not at the intention of the actor. . . . *The specific acts prohibited* or any similar acts upon the flag which ordinary men would know cast contempt upon it *are within the orbit of the prohibition* without regard to the purpose of the person committing the act. Our statute therefore avoids the difficulties found in the unconstructed Massachusetts statute which punished one who 'treats contemptuously' the flag. *Goguen v. Smith,* 471 F.2d 88, 104 (1st Cir. 1973), aff'd, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)."

305 A.2d at 679 (emphasis added).

the language was vague not just generally but as applied to Royal:

> "To be sure, there are statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain. The hard-core violator concept makes some sense with regard to such statutes. The present statute, however, is not in that category. This criminal provision is 'vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather that no standard of conduct is specified at all.' *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, [217] (1971). Such a provision simply has *no* core. . . . "

*Id.* at 577–78, 94 S.Ct. at 1249, 39 L.Ed.2d at 614–15.

 We are urged by appellee to focus on the New Hampshire Supreme Court's later construction of the casting contempt provision in determining whether that provision gave adequate guidance to satisfy due process.[14] But even if as construed chapter 573:4 became "a precise, narrowly drawn statute which proscribes certain specific behavior," *Cox v. Louisiana,* 379 U.S. 559, 562, 85 S.Ct. 476–479, 13 L.Ed.2d 487 (1965), fairness requires evaluation of the law as it existed at the time of Royal's arrest and conviction. As the quoted language from *Goguen* indicates, Royal cannot be dismissed as a "hard core" violator whose conduct, without question, was prohibited by the cast contempt provision of the statute. The *Goguen* opinion made clear that such a provision specifies no standard of conduct and has no hard core. *Goguen, supra,* at 577–78, 94 S.Ct. at 614, 39 L.Ed.2d at 1249. Thus at the time of his conviction, Royal could legitimately complain not only of the statute's potential for "chilling" or infringing the rights of others, but also of the unfairness of applying it to him. And while the danger to others might be cured by a narrowing construction on appeal,[15] the unfairness of Royal's standardless arrest, prosecution and trial could not.

> "[W]here an accused is tried and convicted under a broad construction of an Act which would make it unconstitutional, the conviction cannot be sustained on appeal by a limiting construction which eliminates the unconstitutional features of the Act, as the trial took place under the unconstitutional construction of the Act."

*Ashton v. Kentucky,* 384 U.S. 195, 198, 86 S.Ct. 1407, 1409, 16 L.Ed.2d 469, 471 (1966).[16] Whatever the merits of the New Hampshire Supreme Court's construction, therefore, it could not validate retroactively

---

14. The New Hampshire Supreme Court's construction is, of course, binding upon us. *Pollard v. Dwight,* 8 U.S. (4 Cranch) 421, 429, 2 L.Ed. 666, 668 (1808). But the question here is not what the statute means or says, but whether the court's construction can be applied retrospectively to Royal consistently with due process. *See Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed. 894 (1964).

15. The danger of vagueness on the face of a statute is more obviously cured when, as here, the offending language is removed by legislative repeal. *See* note 2 *supra.* However, while a repeal eliminates the danger of future selective law enforcement, it may also underscore the selectivity of such enforcement as has occurred. Here we observe that there have been only two reported convictions in the period from 1899 to 1973. We note also that the wearing of a small flag emblem on a sleeve even upside down and partially covered by another patch, is hardly conduct so patently illegal as to require no definition at all.

16. *See Smith v. Goguen,* 415 U.S. 566, 580, 94 S.Ct. 1242, 1250, 39 L.Ed.2d 605, 616 (1974) (recognizing "the problems presented by an appellate court's limiting construction in the very case in which a defendant has been tried under a previously unnarrowed statute . . ."); *cf. Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed. 894 (1964). *But see Winters v. New York,* 333 U.S. 507, 514–15, 68 S.Ct. 665, 669, 92 L.Ed. 840, 849 (1948); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). *See generally* Freund, *The Supreme Court and Civil Liberties,* 4 Vand.L.Rev. 533, 540–41 (1951); Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 U.Pa. L.Rev. 67, 73–74 (1960).

the casting contempt ground of Royal's conviction.

■ Nor can the trial court's finding that Royal also "publicly defiled" the flag be viewed as a "distinct alternative basis" on which the conviction can be sustained. *Coonan v. Commanding Officers,* 343 F.Supp. 1281, 1282 (E.D.Wis.1972); *see Street v. New York,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969). Royal was not charged specifically with defilement and his conviction was not upheld by the New Hampshire Supreme Court on that basis. Although the Supreme Court found sufficient evidence of mutilation and defacement it made no mention of defilement notwithstanding the Superior Court's finding. Without any explanation by either New Hampshire court of how petitioner's conduct defiled the flag,[17] we are unable to say that the defiling ground was sufficiently definite and independent to support the conviction alone.

*Vacated and remanded with directions to grant the writ.*

---

**17.** We cannot tell, for example, whether the patch that "partially covered" the flag was neatly sewn along one border of the flag, or whether it was itself a symbol of some sort, as in *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), and *Cline v. Rockingham County Superior Court,* 502 F.2d 789 (1974).