Francis A. LOVELY,
Petitioner, Appellant,

v.

Michael J. CUNNINGHAM, Warden,
New Hampshire State Prison,
Respondent, Appellee.

No. 85–1379.

United States Court of Appeals,
First Circuit.

Argued March 3, 1986.

Decided June 24, 1986.

Eleanor Krasnow, Manchester, N.H., by Appointment of the Court, for petitioner, appellant.

Amy L. Ignatius, Asst. Atty. Gen., Civil Bureau, with whom Stephen E. Merrill, Atty. Gen., Concord, N.H., was on brief, for respondent, appellee.

Before COFFIN and BREYER, Circuit Judges, and MALETZ,* Senior Judge.

COFFIN, Circuit Judge.

This appeal from the district court's denial of a writ of habeas corpus challenges the retroactive application to petitioner of the New Hampshire Supreme Court's construction of the state's Aggravated Felonious Sexual Assault statute, RSA 632–A:2 (Supp.1983). In particular, the challenge addresses the court's interpretation of "ex-

* Of the United States Court of International Trade, sitting by designation.

tortion", one of the listed means of coercing sexual penetration, as embracing "threats of economic reprisal". *State v. Lovely*, 124 N.H. 690, 695, 480 A.2d 847, 850 (1984). We affirm the judgment below.

The indictments, containing twelve counts, charged the felony of Aggravated Felonious Sexual Assault (involving sexual penetration), and eight complaints charged the misdemeanor of Sexual Assault (not involving sexual penetration). They all contained the basic allegations that defendant "did, knowingly by coercion engage in [a sexual act with victim and] coerced [victim] ... by threatening him with [one or more of the following:] loss of his employment, housing and possible criminal charges involving monies owed by the victim to the defendants should he not submit." The factual background was, in brief, that petitioner, a state liquor store manager, befriended victim, a drifter, and over a period of four months spent in excess of one thousand dollars on him, hired him as an employee at the liquor store, paid $60 to the Hanover police by way of restitution for a theft committed by victim, paid his room rent, and even urged victim to live in petitioner's home.

As time went on, according to victim's testimony, petitioner coerced victim on many occasions into performing sexual acts by making threats. The most numerous threats were of the loss of victim's job, which required little work for the money.[1] A few threats were that victim would no longer be allowed to stay in petitioner's home or in victim's rented room.[2] Still other threats were of a generalized nature, referring to the police.[3] At several points

victim gave some more details to his perception of the threats relating to the police. On one exchange, victim stated that his fear was that petitioner would sue him for the money paid the Hanover police by way of restitution. Since victim had no money, he speculated that "if you get sued maybe you could end up in jail." [Tr. 384]. At another point, victim referred to a threat by petitioner "to take me to court, criminal court, or whatever, about the money that he had spent on me." [Tr. 536]. On another occasion victim said that he submitted to sexual advances against his will because "I didn't know exactly what suing meant, so I was scared...." [Tr. 392]. Another source of victim's apprehension was that he interpreted petitioner's "keeping me out of trouble" talk to refer to two other crimes concerning which the Hanover police were looking for him. [Tr. 507].

The court, in instructing the jury, read the twelve felony counts and the eight misdemeanor counts, and quoted the relevant statutory definitions of the crimes and of the element of coercion by "threatening to retaliate", mentioning "extortion" as included in the latter. The court also charged that the state had to prove absence of consent beyond a reasonable doubt, adding, "in considering the issue of consent you may consider what steps [victim] took to resist performing the alleged acts." There were no objections to any of these instructions. The jury returned verdicts of guilty on all twelve felony counts and on seven of the eight misdemeanor counts.

On appeal petitioner's argument was that threats of financial retribution, as dis-

---

1. Transcript 255, 256, 257, 258, 260, 261, 262, 263, 269, 271, 280, 283, 286, 297, 298, 300, 309, 393, 399, 418.

2. Transcript 286, 297, 300, 546.

3. "[Y]elling about ... how he was helping me with the police." [Tr. 258]; "mention something about ... The Hanover Police." [260]; "I would be in trouble with the police." [261]; "I think he might have said something about the police." [262]; "[Petitioner] started yelling about the job and the Hanover Police, and that I would get into serious trouble if he decided to

let me go from the store." [271]; "talking about the Hanover Police Department, the payment, and the job and that I could be picked out of his house at any time he wanted." [309]; "if I went out the door that I would be sorry." [484]; "He just stated something about the Hanover police.... He was keeping me out of trouble with the Hanover police." [505–506]; "he threatened me with the Hanover police, saying that he was keeping me out of trouble." [508–509]; "he was protecting me, keeping me out of trouble with the law." [546].

tinguished from threats of violence, were not criminalized by the Aggravated Felonious Sexual Assault statute. The New Hampshire Supreme Court disagreed, stating, "[t]hreats of mental punishment, extortion (as defined by RSA 637:5 II to include threats of economic reprisal) ... clearly extend beyond threats of physical violence to reach acts that undermine consent through the use of non-violent coercion. *See generally* ALI Model Penal Code and Commentaries § 213.1, at 312 (1980)." *Lovely,* 124 N.H. at 695, 480 A.2d at 850.

One month after the New Hampshire decision, petitioner filed a "Motion to Supplement Motion to Reconsider", arguing that the state court's construction of the Aggravated Felonious Sexual Assault Statute was unforeseeable and therefore constituted a violation of the ex post facto principle and rendered the statute unconstitutionally vague. This motion being denied, petitioner filed a petition for a writ of habeas corpus in the district court for the District of New Hampshire. It was subsequently dismissed and this appeal followed.

Before addressing petitioner's arguments, we set forth New Hampshire's statutory scheme. The Aggravated Felonious Sexual Assault statute, RSA 632–A:2, provides in pertinent part:

"A person is guilty of a class A Felony if he engages in sexual penetration with another person under any of the following circumstances:

.        .        .        .        .

IV. When the actor coerces the victim to submit by threatening to retaliate against the victim, or any other person, and the victim believes that the actor has the ability to execute these threats in the future."

RSA 632–A:1 defines "Retaliation" as follows:

"II. 'Retaliation' means threats of future physical or mental punishment, kidnapping, false imprisonment, extortion or public humiliation or disgrace."

The statute referring to "extortion" is the following:

"RSA 637:5 Theft by Extortion

I. A person is guilty of theft as he obtains or exercises control over the property of another by extortion and with a purpose to deprive him thereof.

II. As used in this section, extortion occurs when a person threatens to: ....

(g) Take action as an official against anyone ... or cause such action....

....

(i) Do any other act which would not in itself substantially benefit him but which would harm substantially any other person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships."

This assortment of statutes poses a threshold problem of parsing. Indeed, petitioner would call this another basis for reversal. When one tries to diagram the relevant provisions, the structure looks like this:

The felony of Aggravated Felonious Sexual Assault is committed when the actor coerces the victim to engage in sexual penetration

By "threatening to retaliate" (632–A.2, IV)

means

Threaten extortion (632–A:I, II)

means

Threaten to "cause [official] action" (637:5 II(g)) or "do ... act ... which would harm substantially any other person" (637:5 II(i)).

A literal substitution of definitions for key words, therefore, would result in the following definition of aggravated sexual assault: "Sexual penetration when the actor coerces the victim by threatening to threaten to threaten to do any other act...."

Such a reading, of course, might rival Gertrude Stein's "A rose is a rose is a rose" but would treat the legislature's efforts as a nullity. For example, the second clause in 632–A:2 IV, "and the victim believes that the actor has the ability to execute these threats in the future" would have no meaning; the promise of a future threat to make yet another future threat would seem to require no abilities other than survival and voice retention. Moreover, the statutory definition of retaliation in 632–A:1 II as "threats of" various acts seems sorely off base; it leaves no room for a definition of the threatened act itself, and is at odds with the dictionary definition of "paying back" or "punishment in kind", American Heritage Dictionary 1109 (1973), "reprisal", Webster's New World Dictionary 1242 (1957), or "[t]he action of retaliating; the return of like for like; repayment in kind; requital, reprisal." Compact Edition of the Oxford English Dictionary 2520 (1981). It seems highly likely that the definition of "retaliation" was intended to read "physical or mental punishment ... extortion", etc., resulting from a prior threat.

This, however, leaves something to be desired. There are still two "threatens" in sequence: to threaten extortion is (by substituting the definition of extortion in the theft by extortion statute, 637:5 II) to threaten to threaten to "do any other act...." This, of course, makes no sense; a threat to make a future threat would hardly be a source of coercion except against the most acquiescent. This problem, it should be noted, does not arise with the other forms of "retaliation"; one can threaten imminent physical or mental punishment, kidnapping, false imprisonment, and public humiliation or disgrace in return for sexual favors, with an understandably coercive effect. Extortion fits into this role only if it also means an act flowing from one, and only one, present threat.

What the New Hampshire Supreme Court did, without explicit analysis, was to elide the surplus "threaten's" in the various definitions so that coercion could be accomplished by a threat to do an act if submission was not forthcoming. It also equated with "violent or personally endangering threats" "[t]hreats of mental punishment" and extortion, which it characterized as including "threats of economic reprisal". *Lovely*, 124 N.H. at 690, 480 A.2d at 850.

■ One might have wished for a more precise and explicit rationale. One might even disagree with the result. But we simply cannot say that the construction by the supreme court of a state statute in some need of syntactical surgery, resulting in the elision of some words to achieve a sensible interpretation raises a constitutional issue. As is stated and well-documented in 2A N. Singer, *Sutherland Statutory Construction* § 45.12, at 54 (C. Sands 4th ed. 1984) (footnote omitted), "departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question."

■ Petitioner's more basic claim is that New Hampshire's Aggravated Felonious Sexual Assault statute including, as one of the proscribed means of coercing sex through threats to retaliate, a threat to extort, has implicit reference to the traditional statutory crime of extortion, i.e., the obtaining of the property of another through threats. In other words, for the crime of aggravated sexual assault to be committed, he argues, one must have coerced his victim through threatening to take adverse action against him unless the victim handed over his property. When the New Hampshire Supreme Court held that, for purposes of the Aggravated Felonious Sexual Assault statute, coercion through

extortion includes coercion through threats of economic reprisal without the objective of acquiring a victim's property, it, claims petitioner, was so novel and unforeseeable a construction that, under *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), due process forbids its retroactive application to petitioner.[4] In *Bouie,* petitioners, "sit-in" demonstrators who refused, though requested, to leave a drug store, were convicted under a criminal trespass statute providing that "Every entry upon ... lands of another, after notice ... prohibiting such entry, shall be a misdemeanor...." *Id.* at 349 n. 1, 84 S.Ct. at 1700 n. 1. The Court held that the state court, in construing the statute to cover the act of *remaining* on premises after receiving notice to leave and applying such construction to petitioners, had violated the Due Process Clause, because "[t]he crime for which these petitioners stand convicted was 'not enumerated in the statute' at the time of their conduct." *Id.* at 363, 84 S.Ct. at 1707. Specifically, petitioner claims in this case that the state court unforeseeably widened the definition of "extortion" beyond its prior use as a synonym for the statutory crime of "theft by extortion".

In this case, the elements of the statutory offense were not "so changed by judicial interpretation as to deny to [petitioner] fair warning of the crime prohibited". *Splawn v. California,* 431 U.S. 595, 601, 97 S.Ct. 1987, 1991, 52 L.Ed.2d 606 (1977). An important, though not indispensable, factor in *Bouie* was that the state supreme court has adopted an expansive construction of "narrow and precise" statutory language. *Bouie,* 378 U.S. at 352, 84 S.Ct. at 1702. *See also Marks v. United States,* 430 U.S. 188, 195, 97 S.Ct. 990, 994, 51 L.Ed.2d 260 (1977). The Supreme Court explained that "[w]hen a statute on its face is narrow and precise ... it lulls the potential defendant into a false sense of security, giving him no

reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." *Bouie,* 378 U.S. at 352, 84 S.Ct. at 1702. The instant case did not involve "narrow and precise statutory language". The term in question —"extortion"—is itself not precise. Its meaning differs depending on whether one refers to the dictionary, to the common-law crime, or to the various state and federal statutory schemes. Moreover, when alternative statutes in the New Hampshire Criminal Code contain the definition of an imprecise word (extortion), it was not unforeseeable that the court would borrow from one rather than the other.

Petitioner argues that he was deprived of his freedom through violation of the basic due process requirement of notice, saying that the crime of extortion was, at the time of his coercive efforts, the only fair referent. His candidate for that position is 637:1 in the Theft Statutes chapter of the New Hampshire Criminal Code: "Conduct denominated theft in this chapter constitutes a single offense embracing the separate offenses such as those heretofore known as larceny ... extortion...." Although "extortion" in this section is certainly identified as a free standing crime, ambiguity is introduced by referring to it as an offense "heretofore known" as such.

The New Hampshire Supreme Court, as we have noted, chose section II of RSA 637:5. Section I contains the definition of the crime of theft by extortion—i.e., obtaining control of the property of another by extortion with a purpose to deprive him of such property. Section II states that "extortion occurs" when, *inter alia,* one threatens official action or threatens to harm another's financial condition substantially. The court obviously looked on such threats as extortion, whether the objective

---

4. The state court's construction is, of course, binding on us. The question here is not what the statute means or says, but whether the court's construction can be applied retroactively to petitioner consistent with due process. *Royal v. Superior Court,* 531 F.2d 1084, 1088 n. 14 (1st Cir.1976) (citing *Bouie* ).

be sex or property. Petitioner, insisting that "extortion" could properly refer only to the complete crime of theft by extortion, would read Section II as saying that "*theft by extortion occurs* when a person threatens to ... take action as an official ... [or] do any other [harmful] act...." (Emphasis supplied). But such a reading would omit the critical elements of obtaining control of another's property with the purpose of depriving him of such property and would therefore be incomplete.

Petitioner's efforts fall short of persuading us that the New Hampshire Supreme Court's reliance on 637:5 II for its definition of "extortion" resembles the situation in *Bouie* where the state court's opinion drastically expanded the reach of a statute punishing unlicensed entry to include unlicensed continued occupancy.

■ Petitioner has one other claim—that the Aggravated Felonious Sexual Assault statute, as construed by the New Hampshire Supreme Court, is void for vagueness. Petitioner's main contention is that the New Hampshire Aggravated Felonious Sexual Assault statute, as interpreted by the state court, would permit, as he asserts happened in the case at bar, the criminal prosecution of one who endeavors to exert pressure on a lover for continued favors. Indeed, we share the concern that the statute not be used to criminalize lover's quarrels. We therefore look for guidance in applying the statute and check to see if it was misapplied in this case.

In understanding the scope and direction of the New Hampshire Supreme Court's opinion, we look first at the cited page of the ALI Model Penal Code and Commentaries, Part II, § 213.1, at 312 (1980). Here is found a discussion of the Code's closest analogy to the New Hampshire statute, a crime subordinate to rape, "gross sexual imposition". *Id.* at § 213.1(2). One variation of this crime is sexual intercourse between a man and a female not his wife if the female is compelled to submit "by any

threat that would prevent resistance by a woman of ordinary resolution". *Id.* at § 213.1(2)(a). The commentary proceeds in part as follows:

> "Examples might include *threat to cause her to lose her job* or to deprive her of a valued possession. This provision extends liability for coercion by threat far beyond anything contemplated by prior law. It rests on the judgment that using one's ability to cause harm in order to override the will of a reluctant female is wrongful and should be punished.

> "Stated abstractly, the rationale for Subsection (2)(a) seems self-evident. Yet there are obvious dangers in extending the prospect of criminal sanctions into the shadow area between coercion and bargain. To take an extreme example, the man who 'threatens' to withhold an expensive present unless his girlfriend permits his advances is plainly not a fit subject for punishment under the law of rape." (Emphasis supplied.)

The New Hampshire court, in specifically referencing this discussion, indicated its general acceptance of the Code's approach to distinguishing "illegitimate threat from the process of bargain." *Id.* at 314. The Commentary noted that "[t]he most refined resolution of this issue is achieved under the law of extortion .... [and] guidance can be drawn from this source in the effort to distinguish between coercion and bargain in the application of the Model Code provision on gross sexual imposition." *Id.* at 314–315. We are then referred to the Code's section on "Theft by Extortion", § 223.4, at 201, with provisions similar to but not identical with New Hampshire's 637:5.

We now briefly address the evidentiary record, as the jury had a right to view it. We note at the outset that we must interpret this record, not only taking all facts and inferences therefrom favorable to respondent, but measuring them against the standard of constitutional adequacy appli-

cable to state court convictions. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ("question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original).

We would concede that the evidence of threats to end victim's privilege of living with petitioner and his family would, without more, seem to us to resemble the withholding of an expensive present. But we are persuaded that the combination of petitioner's various threats to make trouble for victim with the police, *see* n. 3 and accompanying text, *supra,* and his threats to cause victim to lose his job, *see* n. 1; *supra,* constitute a supportable basis for a finding of extortion. Not only were there the numerous generalized threats to talk to the police about victim and the money owed petitioner, but petitioner allegedly threatened to take him to criminal court and victim told of his fear of ending up in jail and of being prosecuted for two crimes for which he was being sought by the police. Such threats fall within both 637:5 II(g) ("cause [official] action [against anyone]") and 637:5 II(i) ("[d]o any other act which would not in itself substantially benefit [petitioner] but which would harm substantially [victim] with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships").

Moreover, the plethora of petitioner's threats to fire victim, together with the dire consequences apprehended by petitioner of being without any financial resources, seem clearly to qualify as threats under 637:5 II(i). Indeed, as we have noted, the Model Penal Code commentary to § 213.-1(2)(a) specifically cites as an example of a punishable threat a "threat to cause [victim] to lose [his] job". It may well be that the job in this case involved very little work, but the jury was entitled to find the disproportion between benefit to petitioner and harm to victim sufficient to bring the threats within the realm of coercion. Additionally, the jury was specifically instructed to consider any evidence of resistance by victim in connection with determining whether the state had carried its burden of proving lack of consent.

In sum, although the prosecution's case was far from overpowering, we are satisfied that the combination of circumstances testified to supported the jury's implicit finding that the situation in which victim found himself was that of coercion rather than bargain. We acknowledge, as does the Model Penal Code commentary, that there will be problems of drawing a boundary between unpunishable bargain and punishable coercion. The instant case, as it could reasonably have been viewed by the jury, did not so approach the margins as to prejudice petitioner by any vagueness that might exist as to boundaries.

*For the reasons discussed above, the decision of the district court is affirmed. No costs.*