Leonard James McSHERRY,
Petitioner–Appellant,

v.

Sherman BLOCK, Sheriff, et al.,
Respondents–Appellees.

No. 88–5822.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1989.

Decided July 21, 1989.

John H. Scott, Los Angeles, Cal., for petitioner-appellant.

John A. Vander Lans, Long Beach City Prosecutor, Robert R. Recknagel, Asst. City Prosecutor, Gerry L. Ensley, Long Beach, Cal., for respondents-appellees.

Before WALLACE, CANBY and TROTT, Circuit Judges.

TROTT, Circuit Judge:

In a habeas corpus petition, Leonard James McSherry challenges his conviction in state court for violations of California's loitering statute. He argues that because the statute is ambiguous and had not been clarified at the time of the conduct for which he was convicted, his conviction under that statute violated due process and must be set aside. McSherry also contends

that the jury was improperly instructed on the standard of proof required to show an intent to loiter. We disagree with both contentions and affirm the dismissal of his petition.

## I

### BACKGROUND

On August 4, 1986, appellant was convicted of five counts of loitering about schools in violation of California Penal Code § 653g. That statute provides in pertinent part:

> Every person who loiters about any school or public place at or near which children attend or normally congregate and who remains at any school or public place at or near which children attend or normally congregate, or who reenters or comes upon such school or place within 72 hours, after being asked to leave ... is a vagrant.

The evidence at trial consisted of highly incriminatory observations of the appellant at five different schools, other relevant observations of his behavior, and his prior convictions for kidnapping a minor and lewd conduct with a girl under the age of eighteen. However, it was undisputed that appellant was never asked to leave any of the premises in connection with which his conviction was based.

On August 20, 1986, McSherry filed a petition for habeas corpus in the Superior Court of Los Angeles County attacking the judgment of conviction on the ground that section 653g requires as an element of its *corpus delicti* that even a loiterer with criminal intent must have been asked to leave the school premises. That petition was denied. Petitions for writs of habeas corpus were subsequently denied by the California Court of Appeal and the California Supreme Court on September 16, 1986, and October 16, 1986, respectively.

Appellant's conviction was affirmed on direct appeal by the Appellate Department of the Los Angeles County Superior Court in an opinion filed June 10, 1987. The Appellate Department held, *inter alia*, that although the penal statute under which appellant was convicted was ambiguous, it could be interpreted to prohibit appellant's conduct. In rejecting appellant's proposed interpretation of the statute as the sole basis upon which a conviction could be based, the Appellate Department determined that section 653g, as amended in 1979, separately covered *both* those who lingered with intent to commit crimes *and* vagrants who remain or re-enter school grounds after being asked to leave. This was the first occasion at the appellate level on which the statute which we consider was so construed.

Appellant thereafter and on the same ground sought relief in mandate or habeas corpus from the California Court of Appeal. That petition was summarily denied on August 4, 1987. A petition for review to the California Supreme Court was granted on October 22, 1987, and the matter was returned to the Court of Appeal without opinion or directions. However, the Court of Appeal again summarily denied the petition on November 4, 1987. Appellant's second petition for review in the California Supreme Court was summarily denied on November 12, 1987.

On November 13, 1987, appellant filed a petition for federal habeas corpus in the United States District Court for the Central District of California. On February 4, 1988, the magistrate filed his findings and recommendations. He concluded that the jury instruction on the standard of proof required to show an intent to loiter did not deny appellant a fair trial, and that although California Penal Code § 653g was ambiguous, since the Appellate Department of the Superior Court had interpreted that statute to apply to appellant's conduct, the federal courts must defer to that interpretation. On February 18, 1988, the magistrate's findings, recommendations, and conclusions were adopted in full by the district court, and appellant's petition was denied. He timely appeals.

## II

### STANDARD OF REVIEW

■ We review the district court's denial of a petition for habeas corpus *de novo*.

*Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985).

## III

## DISCUSSION

### A. Due Process Vagueness

Up until the time appellant's conviction was affirmed on direct appeal, the California courts never had occasion to construe section 653g, as amended in 1979. In affirming appellant's conviction, however, the Appellate Department of the Los Angeles County Superior Court held that section 653g had a dual purpose: (1) to protect school children from the *loiterer;* and (2) to add to those punishable as *vagrants,* those who remain or reenter school grounds after being asked to leave. Appellant argues that the statute is ambiguous and that the state court's clarifying interpretation, rendered subsequent to his conduct, amounted to the imposition of punishment without prior fair notice. We find, however, that the very ambiguity that exists in this statute is, in part, what saves appellant's conviction.

It is, of course, a basic tenet of our jurisprudence that "criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law." *Jordan v. DeGeorge,* 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951) (citations omitted). This principle is usually applied to situations in which the language in a statute is so vague that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *See Kolender v. Lawson,* 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983); *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162–63, 92 S.Ct. 839, 843–44, 31 L.Ed.2d 110 (1972); *United States v. Harriss,* 347 U.S. 612, 617–18, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954); *Connally v. General Construction Co.,* 269 U.S. 385, 392–93, 46 S.Ct. 126, 128, 70 L.Ed. 322 (1926).[1]

We agree with appellant that, prior to the affirmance of his conviction by the Appellate Department, the statute on its face was vague and ambiguous with respect to whether loitering about school grounds, in the absence of a request to leave, was criminal. That facial ambiguity, however, was expressly and unequivocally removed when the Appellate Department held, relying in part on common sense, as well as the legislative and judicial history of the school loitering statute, that the request to leave language applies only to the vagrancy and not to the loitering provision of the statute. We are bound by that state court's construction of its own penal statute.[2] *See Missouri v. Hunter,* 459 U.S.

---

**1.** A related concern is that vague statutes may unnecessarily inhibit the exercise of first amendment freedoms, because uncertain meanings will lead citizens to "steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned,* 408 U.S. at 109, 92 S.Ct. at 2299. While "stricter standards of permissible statutory vagueness may be applied to a statute" having a potentially inhibiting effect on a first amendment right, *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959), neither of the parties in this appeal claim that section 653g impinges on first amendment freedoms. *See also Rose v. Locke,* 423 U.S. 48, 50 n. 3, 96 S.Ct. 243, 244 n. 3, 46 L.Ed.2d 185 (1975); *Smith v. Goguen,* 415 U.S. at 572–73, 94 S.Ct. at 1246–47.

**2.** The construction of a state statute by the Appellate Department of the Superior Court of California is binding on all, including the federal courts, unless it conflicts with decisions of the California Court of Appeal or the California Supreme Court. *See In re Wiegand,* 27 F.Supp. 725 (S.D.Cal.1939). In the present case, we are further confronted with the situation in which the Appellate Department's interpretation of section 653g was removed from publication by order of the California Supreme Court pursuant to Rule 976(c)(2) of the California Rules of Court. While the depublication order may constitute a factor as to whether we are bound by the Appellate Department's construction, we do not necessarily find that factor decisive. In *King v. Order of United Commercial Travelers of America,* 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948), the Supreme Court held that a federal court of appeals did not have to accept the unpublished decision of a state court of common pleas on a matter of state law. That case,

359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *O'Brien v. Skinner,* 414 U.S. 524, 531, 94 S.Ct. 740, 744, 38 L.Ed.2d 702 (1974); *Wainwright v. Stone,* 414 U.S. 21, 22–23, 94 S.Ct. 190, 192–93, 38 L.Ed.2d 179 (1973); *Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). *See also Gentry v. MacDougall,* 685 F.2d 322, 323 (9th Cir.1982); *Knapp v. Cardwell,* 667 F.2d 1253, 1260 (9th Cir.), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982); *Tyree v. White,* 796 F.2d 390, 392 (11th Cir.1986); *Lovely v. Cunningham,* 796 F.2d 1, 5 n. 4 (1st Cir. 1986); *Welton v. Nix,* 719 F.2d 969, 970 (8th Cir.1983); *Knutson v. Brewer,* 619 F.2d 747, 751 (8th Cir.1980); *Royal v. Superior Court,* 531 F.2d 1084, 1088 n. 14 (1st Cir.), *cert. denied,* 429 U.S. 867, 97 S.Ct. 178, 50 L.Ed.2d 147 (1976); *United States ex rel. Horelick v. Criminal Court of the City of N.Y.,* 507 F.2d 37, 42 (2d Cir.1974); *Schaefer v. Leone,* 443 F.2d 182, 185 (2d Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 251 (1971).[3]

■ While the interpretive gloss on the statute may bind this court as a matter of statutory construction, we are not, however, similarly bound as to the constitutional effect of that construction. *See Missouri v. Hunter,* 459 U.S. at 368, 103 S.Ct. at 679. The principle issue in this case is "whether the [state] court's construction can be applied retroactively to [appellant] consistent with due process." *Lovely v. Cunningham,* 796 F.2d at 5 n. 4; *see also Welton v. Nix,* 719 F.2d at 970 ("Our task is only to decide whether the [state court's] interpretation of [its] own law is so unexpected, so outlandish, that no reasonable person could have expected it") (citing *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)). *Knutson v. Brewer,* 619 F.2d at 751, articulates the crucial test: "We must decide only whether the construction actually given the statute was foreseeable".[4]

■ That the statute at issue was imperfectly drafted and in need of syntactical surgery cannot be questioned. That imprecision does not in itself, however, warrant a finding that the state court's ultimate construction was unforeseeable. As the Supreme Court admonished in *Rose v. Locke,*

however, was unique. The state court had relied upon the decision of a federal district court; the "Court of Common Pleas [did] not appear to have such importance and competence within [the State's] own judicial system that its decisions should be taken as authoritative expositions of that State's 'law'" (*id.* at 161, 68 S.Ct. at 492), another state court had rendered an opinion rejecting the reasoning of the court of common pleas, illustrating "the perils of interpreting a Common Pleas decision as a definitive expression of [state law]" (*id.* at 162, 68 S.Ct. at 493); and the interpretation of the Court of Appeals, which rejected the decision of the court of common pleas, was strongly supported by the decisions of the State Supreme Court. The Court stressed that its decision was not "to be taken as promulgating a general rule that federal courts need never abide by determinations of state law by state trial courts." *Id.*

We find therefore that we may not summarily disregard the Appellate Department's construction of section 653g merely on the basis that its construction was rendered in an unpublished opinion. Furthermore, in light of the legislative and judicial history of the statute here in question, we are not "convinced ... that the highest court of the state would decide [to construe the statute] otherwise." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). In any event, the question in this case is not so much whether we are 'bound' by a state court's construction of an admittedly ambiguous statute, but whether that state court's construction was foreseeable.

**3.** On "rare occasions", a federal court may re-examine a state court interpretation of state law "when it appears to be an 'obvious subterfuge to evade consideration of a federal issue.'" *Mullaney,* 421 U.S. at 691 n. 11, 95 S.Ct. at 1886 n. 11 (quoting *Radio Station WOW, Inc. v. Johnson,* 326 U.S. 120, 129, 65 S.Ct. 1475, 1480, 89 L.Ed. 2092 (1945)) (citations omitted). Such circumstances are not present in this case.

**4.** This circuit has in the past held that retroactive application of an interpretation of state law is not prohibited per se; however, "[s]uch a decision may violate due process if the court's interpretation of a criminal statute enlarges its scope to cover behavior not previously considered to be unlawful." *Camitsch v. Risley,* 705 F.2d 351, 355 (9th Cir.1983). *See also United States v. Walsh,* 770 F.2d 1490, 1492 (9th Cir. 1985) ("radical and unforeseen departure from prior law"); *United States v. Wilder,* 680 F.2d 59, 60 (9th Cir.1982) ("radical, unforeseeable departure from prior law").

423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975) (per curiam):

> It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' ... But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties,'.... Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.... All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

*Rose v. Locke*, 423 U.S. at 49–50, 96 S.Ct. at 244 (citations and footnote omitted).

*Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), provides important guidance. In *Bouie*, petitioners, "sit-in" demonstrators who refused, though requested, to leave a drug store, were convicted under a statute which, by its terms, made it a criminal offense *to enter* upon the lands of another after notice prohibiting such entry. The state courts construed the statute, after the commission of the alleged offense, to cover the act of *remaining* on the premises after receiving notice to leave. The Supreme Court, after referring to the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime," *id.*, 378 U.S. at 350, 84 S.Ct. at 1701, pointed out that on its face the language of the statute was "admirably nar-

row and precise." *Id.* at 351, 84 S.Ct. at 1701. It was, however, the very existence of this "narrow and precise" language which proved to be an important factor in the Court's determination that the statute had been unforeseeably and retroactively expanded in violation of due process.

The Supreme Court explained that "[w]hen a statute on its face is narrow and precise ... it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." *Id.* at 352, 84 S.Ct. at 1702. To the contrary, "[w]hen a statute on its face is vague or overbroad, it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct." *Id.* at 352, 84 S.Ct. at 1702.[5]

The instant case, most assuredly, does not involve judicial expansion of "narrow and precise" statutory language. To this extent, appellant's situation is unlike *Bouie* in that it cannot be said that appellant was "lull[ed] ... into a false sense of security" in believing that he would receive the benefit of a favorable construction of an admittedly ambiguous penal statute. *See, e.g., Knutson*, 619 F.2d at 751 ("the Due Process Clause does not automatically guarantee that a defendant will receive the benefit of the narrowest possible construction of a previously unexplicated phrase in a state criminal statute").

While persuasive, we do not, however, find this distinguishing factor in itself sufficient to decide whether it was foreseeable that the state appellate court would retroactively interpret the statute as it did, and our analysis must necessarily go further.

The Supreme Court has recognized that an interpretation of a criminal statute does

---

**5.** The Supreme Court, in subsequent cases, has reiterated the importance that clear statutory language has on the foreseeability of a retroactive judicial interpretation. *See, e.g., Marks v. United States*, 430 U.S. 188, 195, 97 S.Ct. 990, 994, 51 L.Ed.2d 260 (1977) ("The statutory language [in *Bouie* ] ... was 'narrow and precise,'

... and that fact was important to our holding that the expansive construction adopted by the State Supreme Court deprived the accused of fair warning"); *Rose v. Locke*, 423 U.S. at 53, 96 S.Ct. at 246 (distinguishing *Bouie* on similar grounds).

not deprive a defendant of fair notice "simply because difficulty is found in determining whether certain marginal offenses fall within [its] language"; that "[i]n determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1963). We find it significant in this case that appellant's conduct was culpable, irrespective of his proffered interpretation of the statute.

The very statute upon which appellant was convicted has been held to define the word "loiter" as lingering about schools and public places for the purpose or with the intent of effectuating some criminal act.[6] Cal.Penal Code § 653g; *Huddleson v. Hill*, 229 Cal.App.2d 618, 40 Cal.Rptr. 581, 584 (1964). On appeal, appellant neither challenges that definition nor, indeed, refutes that his particular conduct fell well within its stead. His habeas corpus challenge, reduced to its simplest terms, is that he had a right not to be convicted of loitering in the absence of a request to leave.

"In applying the rule against vagueness or overbroadness something ... should depend on the moral quality of the conduct." Freund, *The Supreme Court and Civil Liberties*, 4 Vand.L.Rev. 533, 540 (1951), quoted with approval in *Bouie*, 378 U.S. at 362 n. 9, 84 S.Ct. at 1707 n. 9. We therefore place considerable emphasis on this factor in determining whether the state court's interpretation of section 653g was foreseeable.

The Eighth Circuit was confronted with a similar situation involving a habeas challenge to a retroactive judicial interpretation of a state criminal statute. In *Knutson v. Brewer, supra*, petitioner had been convicted of kidnapping for ransom under Iowa Code § 706.3. That statute required that the victim be held for ransom, and that ransom could be "any money, property, or thing of value." Evidence at trial showed that petitioner had kidnapped the victim, forced her to commit sodomy, and released her after a short period of time. The Iowa Supreme Court held that obtaining sexual gratification constituted a "thing of value" within the meaning of the kidnapping for ransom statute, and that petitioner was therefore properly convicted of this crime, instead of the lesser offense of simple kidnapping. On habeas appeal, petitioner argued that the current construction of the Iowa statute was so unexpected as to violate his right to fair notice under the due process clause of the fourteenth amendment. In determining that the state court's construction was not unforeseeable, and that "[petitioner] took the risk that the [state court] would construe the statute as it did," the Eighth Circuit stated:

> [W]e think it significant that the issue of construction involved here is not the drawing of a line between legal conduct and illegal conduct. What [petitioner] did was unlawful under any interpretation of Iowa law, and he makes no contention to the contrary.... When a person does an act that he well knows to be a violation of *some* law, and when a statute is later interpreted to cover his conduct in a way that does not do violence to the ordinary understanding of the English language, the Fourteenth Amendment is not offended.

*Knutson*, 619 F.2d at 750 (emphasis added). *See also Welton v. Nix, supra* (subsequent state court interpretation of criminal statute deemed foreseeable on similar basis).

---

**6.** At appellant's criminal trial, the pertinent jury instructions as to the elements of the offense defined in section 653g were as follows:

As used in this instruction, the word "loiter" means to delay, linger, or idle about any such school or public place without a lawful purpose for being present for the purpose and with the intent of committing some criminal act as opportunity may be discovered. Merely being on or about school grounds without permission is not loitering within this definition.

The intent to be proved is the intent to commit a crime as the opportunity might present itself. Neither allegation nor proof requires an intent to commit a specific crime, but only a specific intent to commit some crime, the fact of the existence of such an intent to be inferred from all the circumstances.

■ This case is thus further distinguishable from that of *Bouie*.[7] Here, there was no danger that a person pursuing what would otherwise be purely innocent behavior could be ensnared by the statute with no warning whatsoever. The Appellate Department did not interpret the statute to encompass what had heretofore been "innocent" conduct. Appellant's actions in this case were far from innocent, and, as will be indicated, had for more than a quarter of a century been made criminal in the state of California. Under such circumstances, it simply cannot be said that appellant had no fair warning that the particular conduct in which he was engaged was punishable. *See Broadrick v. Oklahoma*, 413 U.S. 601, 608, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973) ("even if the outermost boundaries of [the statute] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much").

Finally, and perhaps most persuasively, we find that the state court's interpretation of section 653g was imminently foreseeable in light of the legislative and judicial history of the statute.

The statute upon which appellant's conviction was based was originally enacted in 1929 as Penal Code § 647a, and stated simply:

"Every person who annoys or molests any school child or who loiters about any school or public place at or near which school children attend, is a vagrant, ..."

By an amendment in 1947, the California legislature divided the section into two subdivisions, the first of which punished as a vagrant every person who annoys or molests any child, and the second which read as follows:

"(2) Every person who loiters about any school or public place at or near which school children attend, is a vagrant, ..."

The constitutionality of Penal Code § 647a(2) was considered in *Huddleson v. Hill*, 229 Cal.App.2d 618, 40 Cal.Rptr. 581 (1964). In *Huddleson*, the defendants' challenge centered upon use of the word "loiters" in the statute. They contended that the word is of such a broad and all-encompassing character as to include innocent as well as objectionable conduct.

In reviewing various canons of statutory construction, the state appellate court rejected defendants' contention and upheld the constitutionality of the section, stating:

Guided by these canons of construction we have therefore concluded that the term loiter in the context of the statute under consideration proscribes only that species of 'lingering' and 'idling' about schools or public places which is engaged in for an evil or sinister purpose. As pointed out above, section 647a was enacted to protect children. Subdivision (1) thereof makes guilty of a misdemeanor or felony as the case may be every person who annoys or molests any child under the age of 18.... Subdivision (2) provides additional protection for children by removing any opportunity for the child molester to carry out his evil purpose. Both subdivisions label the offender a 'vagrant.' Nevertheless it is obvious that the purpose of the first subdivision is largely punitive while that of the second subdivision is largely preventive.... But, as we have said, the loitering condemned by the second subdivision is not loitering in its general sense but in its restricted and sinister sense. It includes lingering, waiting and delaying but only for a sinister or wrongful purpose and therefore excludes such activities for a lawful purpose. 'Loitering as forbidden includes waiting, but mere waiting for any lawful purpose does not constitute such loitering.'

Therefore as we construe the statute before us, persons who merely sit on park benches, loll on public beaches, pause in the vicinity of schools or linger in the many public areas frequented by children cannot be reasonably considered as loitering within the compass of the statute. It is only when the loitering is

---

7. The Supreme Court in *Bouie* specifically noted that "the petitioners' conduct cannot be deemed

improper or immoral." *Bouie*, 378 U.S. at 362, 84 S.Ct. at 1707.

of such a nature that from the totality of the person's actions and in the light of the prevailing circumstances, it may be reasonably concluded that it is being engaged in 'for the purpose of committing a crime as opportunity may be discovered' ... that such conduct falls within the statute. We therefore hold that the term loiter has a clear and reasonably definite significance in the context of the statute, that it is not so vague and indefinite as to offend constitutional guarantees and that the statute so construed does not invade, deny or abridge personal rights and liberties.

*Huddleson,* 40 Cal.Rptr. at 585–86 (quoting *In re Cregler,* 56 Cal.2d 308, 14 Cal.Rptr. 289, 363 P.2d 305, 307 (1961)).

Since *Huddleson,* the interpretation of the word "loiters" has consistently been held by the California courts to embrace a sinister or wrongful implication, excluding mere waiting for any lawful purpose but connoting lingering in a designated place for the purpose of committing a criminal act as opportunity may arise. *See, e.g., People v. Superior Court,* 46 Cal.3d 381, 250 Cal.Rptr. 515, 758 P.2d 1046, 1049 (1988); *People v. Teresinski,* 30 Cal.3d 822, 180 Cal.Rptr. 617, 640 P.2d 753, 757 (1982); *In re Christopher S.,* 80 Cal.App.3d 903, 146 Cal.Rptr. 247, 249 (1978); *People v. Junious,* 30 Cal.App.3d 432, 106 Cal.Rptr. 344, 347 (1973); *People v. Frazier,* 11 Cal. App.3d 174, 90 Cal.Rptr. 58, 64 (1970); *Mandel v. Municipal Court,* 276 Cal. App.2d 649, 81 Cal.Rptr. 173, 178–80 (1969).

In 1967, subdivision (2) was amended to add the phrase "or normally congregate" after the word "attend." In addition, subdivision (2) was removed from Penal Code § 647a, and separately re-enacted as Penal Code § 653g.[8] As enacted in 1967, section 653g read as follows:

"Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, ..."

In 1970, section 653g was amended by the addition of a second paragraph which defined "loiters" to mean "... to delay, to linger, or to idle about any such school or public place without a lawful purpose for being present." The constitutionality of the 1970 amendment was challenged in *People v. Hirst,* 31 Cal.App.3d 75, 106 Cal. Rptr. 815 (1973). In *Hirst,* the defendants went onto the grounds of a San Diego high school to make contact with students for the purpose of distributing leaflets and to circulate petitions for signatures. Defendant Hirst was asked to leave the campus by a school administrator. He refused to do so, stating that he would wait to talk to a girl who had gone to the restroom. The defendants were subsequently arrested and convicted under section 653g.

On appeal, the defendants argued that the 1970 amendment rendered section 653g unconstitutional on the ground that it eliminated the connotation of a sinister intent and made punishable otherwise innocent acts.

After reviewing the legislative and judicial history of section 653g, the appellate court determined that the reference to "without a lawful purpose" did not change the construction of the statute. It concluded generally that "[t]he statute as amended is constitutional and its constitutionality is based upon the same meaning of the word 'loiter' given to its use in the preceding statute by those decisions that held such former statute to be constitutional." *Hirst,* 106 Cal.Rptr. at 819. More specifically, however, the court reversed the convictions, stating:

The evidence in this case shows that all defendants were upon the school ground for the purpose of distributing literature, and in the case of Hirst, also to talk to a student, neither of which is itself for an unlawful purpose; since the statute under which they were prosecuted does not penalize their presence unless it was for an unlawful purpose, the judgments are reversed.

---

**8.** Subdivision (1), pertaining to the annoyance or molestation of any child under the age of eighteen, is presently set forth in Cal.Penal Code § 647.6 (1987).

*Id.* at 822.[9]

Apparently recognizing the folly of their ways, and obviously in direct response to *Hirst,* the California legislature, in 1979, amended section 653g, this time inserting the troublesome "and who remains at any school or public place at or near which children attend or normally congregate, or who reenters or comes upon such school or place within 72 hours, after being asked to leave ..."

▌ The unfortunate aspect, of course, of this later amendment was that it made it possible to read the request to leave language as modifying the loitering provision which had been in the statute all along. Nevertheless, it is abundantly clear to us that such a construction was neither intended by the California legislature nor supported by a cursory reading of the case law on the subject. More importantly, however, the legislative and judicial history of the statute further distinguishes the present case from that of *Bouie.* The interpretation given section 653g by the Appellate Department cannot be said to have "not the slightest support in prior [state] decisions." *Bouie,* 378 U.S. at 356, 84 S.Ct. at 1704.

While we need not go so far, we are inclined to say that the state court's construction of the statute was not only foreseeable, it was inevitable. Since its enactment, Cal.Penal Code § 653g represents a distinct legislative effort to safeguard the well-being of school children. The construction of the statute that appellant expostulates would render free from penal liability the loiterer who is not discovered by school officials and asked to leave. Such a construction, as pointed out by the Appellate Department, "would provide a privileged sanctuary for those who come onto school grounds, or adjacent areas where children congregate, to reconnoiter

for or 'case' prospective victims." Appellant took the risk that the Appellate Department would logically construe the statute as it did, and he had ample warning that the conduct for which he was convicted was a crime.

**B. Standard of Proof Instruction**

Appellant contends that the trial court committed reversible error by instructing the jury that appellant's intent to linger for the purpose of committing a crime could be established by "substantial evidence." The challenged instruction read as follows:

> "Evidence need not be presented to show what the crime is that the defendant might commit. It is sufficient if considering all the evidence, there is substantial evidence that the defendant was lingering for the purpose of committing a crime. The fact of the existence of such an intent can be inferred from all the circumstances."

*In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which established the requirement that the state prove every element of an offense beyond a reasonable doubt, provides the basis for appellant's contention of error. The Court in *Winship,* after noting that the reasonable doubt standard is a "prime instrument for reducing the risk of convictions resting on factual error," emphasized that the standard is "indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.'" *Id.* at 363–64, 90 S.Ct. at 1072 (citation omitted).

However, in determining whether the state has transgressed constitutional bounds, a federal court sitting in habeas exercises a limited role. When, as here, a habeas challenge on a state conviction is premised on an assertedly erroneous jury instruction, "it must be established not

---

**9.** The court specifically noted that the legislative intent behind the 1970 amendment was to make available to school administrators a penal statute whose sanctions could be invoked to rid the campus of persons whose presence is not otherwise "unlawful." As the court put it:

> We do not doubt the Legislature, in adopting the amendment, had the laudable and attainable aim of making it possible to penalize persons coming upon or remaining upon school grounds for their own purposes unrelated to school activities without permission of the school authorities or against their expressed request to leave.

106 Cal.Rptr. at 817.

merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Darnell v. Swinney,* 823 F.2d 299, 302 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1012, 98 L.Ed.2d 978 (1988) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

We thus evaluate jury instructions "in the context of the overall charge to the jury as a component of the entire trial process." *Prantil v. California,* 843 F.2d 314, 317 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988) (quoting *Bashor v. Risley,* 730 F.2d 1228, 1239 (9th Cir.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984)). Habeas relief is warranted only if the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400.

We are not persuaded that due process was denied by the instruction here challenged. The word "substantial" was never defined for the jury. The jury was never told that the word meant more, less, or the equivalent of "beyond a reasonable doubt." Moreover, several other instructions given by the trial court served to counteract any tendency to lessen the state's burden of proof. Prior to instructing the jury, the trial court admonished that "[t]hese instructions are to be considered as a whole and each individual instruction is to be considered in light of all the others." The trial judge informed the jury of the role of the presumption of innocence:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

The term "reasonable doubt" was defined for the jury, and the term was utilized at several points in the course of the court's instructions. There is no other reference whatsoever to the "substantial evidence" language, which was employed in only one instruction.

We are confident that the instructions, taken as a whole, effectively neutralized any negative effects of the "substantial evidence" language. It cannot be said under these circumstances that appellant's guilt was evaluated under a standard below that required by the Constitution.

AFFIRMED.

CANBY, Circuit Judge, dissenting:

As Judge Trott's opinion recognizes, the crucial question in this case is whether the California court's interpretation of the loitering statute "was so unforeseeable as to deprive the defendant of the fair warning to which the Constitution entitles him." *Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964). In my view, the state's interpretation was unforeseeable for the simple reason that it ran quite counter to the plain words of the statute. The statute provides:

> Every person who loiters about any school or public place at or near which children attend or normally congregate *and who remains* at any school or public place at or near which children attend or normally congregate, or who reenters or comes upon such school or place within 72 hours, *after being asked to leave ...* is a vagrant....

Cal.Penal Code § 653g (emphasis added). Whatever the legislature may have intended, it is rather clear what it said. "And who remains" is a conjunctive phrase; the crime that is described in the first part of the statute requires that the offender both loiter *and* remain. The word "remain" is itself incomplete unless qualified by some additional phrase, such as "remain for more than five minutes" or "remain after being asked to leave." The legislature specified the latter qualification. If words are given no more than their permissible meaning, a person does not violate section 653g by loitering at a school unless he remains after being asked to leave.

It follows from what I have said that I do not regard section 653g as ambiguous.[1] I am unable, therefore to accept the view of the majority that the very ambiguity of section 653g put McSherry on notice that his conduct might later be held unlawful. Instead, I view this case as falling within the rule of *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). There the Supreme Court was faced with a South Carolina statute that prohibited "entry upon the lands of another . . . after notice . . . prohibiting such entry." The South Carolina Supreme Court interpreted the statute to apply to civil rights sit-in demonstrators who had entered restaurants without being given notice, but who had been given notice to leave *after* having entered. The United States Supreme Court, in reversing on due process grounds, differentiated the case from the usual one involving a vague criminal statute:

> The instant case seems distinguishable, since on its face the language of § 16–386 of the South Carolina Code was admirably narrow and precise. . . . The thrust of the distinction, however, is to produce a potentially greater deprivation of the right to fair notice in this sort of case, where the claim is that a statute precise on its face has been unforeseeably and retroactively expanded by judicial construction, than in the typical "void for vagueness" situation. When a statute on its face is vague or overbroad, it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct. When a statute on its face is narrow and precise, however, it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction.

*Id.* at 351–52, 84 S.Ct. at 1701–02.

The majority opinion distinguishes *Bouie* partly on the ground that the would-be offenders there were not engaging in clearly immoral or otherwise unlawful conduct. It is certainly true that McSherry was up to no good. It is dangerous to assume, however, that would-be violators should be on notice of the potential unlawfulness of their conduct when the crime in question is such an inchoate one as loitering or vagrancy. Loitering, as California defines it, does require an intent to commit a crime, *Huddleson v. Hill*, 229 Cal.App.2d 618, 40 Cal. Rptr. 581 (1964), but the requisite intent is far less definite than in the usual specific intent crime. In McSherry's case, the jury was instructed:

> The intent to be proved is the intent to commit a crime as the opportunity might present itself. Neither an allegation nor proof requires an intent to commit a specific crime, but only a specific intent to commit some crime, the fact of the existence of such an intent to be inferred from all the circumstances.

Loitering, then, is a highly incipient crime, falling far short of an attempt. It establishes the earliest boundary of criminality, and one who approaches its line is not to be compared to the criminal already in the act of kidnapping who is merely quibbling about the nature of ransom. *See Knutson v. Brewer*, 619 F.2d 747 (8th Cir.1980). The issue here *is* "the drawing of a line between legal conduct and illegal conduct." *Id.* at 750. So far as the record here reveals, McSherry was committing no crime at all absent the California court's disputed interpretation of section 653g.

The majority opinion traces the history of section 653g and the judicial interpretation of its predecessors, making a substantial case that the California legislature intended to do something other than what it did in its last amendment to the statute.

---

1. It is true that McSherry has argued that section 653g is ambiguous, partly because two courts found it so. I do not regard him, however, as having waived the right to claim that the statute clearly requires a request to leave.

The whole thrust of his argument is that the California courts unexpectedly and unforseeably eliminated that requirement from the statute.

That point carries little weight, however, when the words of the statute are as clear as those of section 653g in its present form. Citizens should not be required, on pain of criminal conviction, to explore legislative and judicial history to determine whether that history condemns their conduct even though the statute itself does not. "[T]o ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishment for actions that are not 'plainly and unmistakably' proscribed." *Dunn v. United States*, 442 U.S. 100, 112–113, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979) (quoting *United States v. Gradwell*, 243 U.S. 476, 485, 37 S.Ct. 407, 411, 61 L.Ed. 857 (1917)).

It is true, of course, that citizens do not normally carry statute books around with them, or memorize their contents. There is accordingly a certain degree of fiction inherent in the requirement of due process notice to the potential offender. We adhere, however, to the constitutional imperative that crimes be defined in advance, rather than retrospectively by policemen or judges, as a guarantee against arbitrary and discriminatory government. *See* L. Tribe, *American Constitutional Law* 474–77 (1978); *Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983). Nowhere is this precaution more important than in regard to such potentially dragnet crimes as loitering and vagrancy.

> Of course, vagrancy statutes are useful to the police. Of course, they are nets making easy the roundup of so-called undesirables. But the rule of the law implies equality and justice in its application.

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 171, 92 S.Ct. 839, 848, 31 L.Ed.2d 110 (1972). Here, California's statute appeared on its face to have avoided the uncertainties attending many vagrancy statutes, by requiring a request that the potential offender leave the school grounds or other place where children congregate. That specificity was destroyed when the California courts interpreted the statute contrary to its plain words.

There is a final irony in this case. To the extent that we do tolerate retrospective judicial interpretation of criminal statutes, we do so out of necessity. Language is incapable of being made perfectly certain in all of its applications. *See Robinson v. United States*, 324 U.S. 282, 286, 65 S.Ct. 666, 669, 89 L.Ed. 944 (1945); *Knutson v. Brewer*, 619 F.2d 747, 750 (8th Cir.1980). Consequently, we accept the cost of some peripheral surprise to a criminal defendant in order to achieve the benefits of a judicial interpretation that binds not only him, but the entire populace in the future. What is to some degree arbitrary for the individual defendant is saved from being arbitrary as a matter of government because the decision makes law.

In McSherry's case, however, the California Supreme Court has eliminated any public benefit that might inhere in judicial construction of the statute, because it has ordered depublication of the decision of the Appellate Department that construed the statute. That action wholly undermines the conclusion of the majority opinion that section 653g was ambiguous on its face, but was rendered non-ambiguous by the construction placed upon it by the Appellate Department. That construction binds McSherry, but it binds no one else in the world because the opinion of the Appellate Department cannot be cited or relied upon as precedent. Rule 977(a) California Rules of Court. Under the majority's view of section 653g, that statute remains ambiguous for everyone but McSherry, and police, prosecutors and courts are free to attempt new interpretations.

For my part, I would hold California to the words of the statute it has enacted, until it adopts another interpretation applicable to all. And if that interpretation is directly contrary to the words of the statute, as in this case, due process requires that it not apply retrospectively. I would grant the writ.